Arthur SMITH # A60167, Plaintiff,

v.

Daniel T. COYNE, et al., Defendants.

No. 98 C 56.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 12, 1998.

See also: 268 Ill.App.3d 574, 206 Ill.Dec. 308, 645 N.E.2d 313.

Arthur Smith, pro se.

*MEMORANDUM OPINION AND ORDER*

SHADUR, Senior District Judge.

Arthur Smith ("Smith") has submitted a self-prepared 42 U.S.C. § 1983 ("Section 1983") Complaint, accompanied by his Application To Proceed Without Prepayment of Fees ("Application") and his Motion for Appointment of Counsel ("Motion"), in each instance using the form provided by this District Court's Clerk's Office for that purpose. For the reasons stated in this memorandum opinion and order and in accordance with the provisions of the 1996 Prison Litigation Reform Act ("Act"), the Application is granted in the limited sense that Smith need not pay the $150 filing fee in advance (although he is

required to pay that fee in future installments), while both the Complaint and this action are dismissed (so that the Motion must be and is dismissed as moot).

As required by the Act, Smith's Application includes a printout from Shawnee Correctional Center ("Shawnee") reflecting the deposits into and withdrawals from his inmate trust fund. Because it appears from that printout that Smith probably was transferred to Shawnee from Joliet Correctional Center ("Joliet") at some point in the six months preceding the December 1, 1997 printout date, while Smith has not obtained and tendered the corresponding information from Joliet as to the transactions in his trust fund account there before that transfer, this Court has simply calculated the average deposits in the Shawnee account for the approximately four-month period covered by the printout and finds that those deposits average out to $41.29 per month.

■ Based on the provisions of the Act and on the Shawnee certificate, Smith is granted leave to file in forma pauperis. Pursuant to 28 U.S.C. § 1915(b)(1), Smith is assessed an initial partial filing fee of $8.26, and the Shawnee trust fund officer is ordered to collect that partial filing fee from Smith's trust fund account there and to pay it directly to the Clerk of Court ("Clerk"). After such payment the trust fund officer at Shawnee, or the corresponding officer at any other correctional facility where Smith is hereafter confined, is authorized to collect monthly payments from his trust fund account in an amount equal to 20% of the preceding month's income credited to the account. Monthly payments collected from Smith's trust fund account shall be forwarded to the Clerk each time the amount in the account exceeds $10 until the full $150 filing fee is paid. All payments shall be sent to the Clerk, United States District Court, 219 South Dearborn Street, Chicago, Illinois 60604, attention: Fiscal Department, and shall clearly identify Smith's name and the 98 C 56 case number assigned to this action. To implement these requirements, the Clerk shall send a copy of this order to the Shawnee trust fund officer.

■ That however succeeds only in giving Smith potential access to this federal court.

That having been done, this Court's threshold examination of Smith's substantive assertions clearly demonstrates the propriety of dispatching Smith's claims at the very outset. Only a brief background description is needed to explain why that is so.

What Smith complains about is what happened in the aftermath of the Illinois Appellate Court's December 13, 1994 reversal of his convictions for aggravated criminal sexual assault, criminal sexual assault and robbery when Smith appealed from the denial of his pro se petition for post-conviction relief (*People v. Smith*, 268 Ill.App.3d 574, 206 Ill.Dec. 308, 645 N.E.2d 313 (1st Dist.1994)). That appeal concluded with a remand of Smith's case to the Circuit Court with a directive that counsel should be appointed to assist Smith in arranging for DNA testing on the state's evidence.

Now Smith seeks to sue four defendants—his subsequently-appointed counsel Daniel Coyne ("Coyne"), Circuit Court Judge John Morrissey, the People of the State of Illinois and Assistant State's Attorney Sophia Lopez ("Lopez")—for an alleged conspiracy to deprive him of his Fourteenth Amendment right to due process of law. Smith's requests for relief are modest:

1. $2 million in compensatory damages against each defendant;

2. $5 million in punitive damages against each defendant; and

3. an order for Smith's immediate release.

To the extent that Smith seeks his immediate release, he plainly runs afoul of *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). That case requires the invalidation of his conviction (something that has not taken place) as a precondition to his bringing any Section 1983 claim that seeks relief from "other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" (*id.* at 486, 114 S.Ct. at 2372). That description would also seem to fit Smith's damage claims, for they too would appear "necessarily [to] imply the invalidity of his conviction or sentence" (*id.* at 487, 114 S.Ct. at 2372). And that being true, *Heck* would dictate the current dismissal of

Smith's entire Complaint on grounds of prematurity.

 Assume however that Smith's damage claims could be read differently, as though they did *not* implicate the validity of his conviction. Although such a reading would take *Heck* out of play as to Smith's effort to collect money damages, each of those claims would still fall short as a matter of law, albeit for differing reasons. As for the State of Illinois, it is not a "person" suable under Section 1983 in any event (*Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989)). And as for the three individual defendants, Smith's description of their actions confirms that each of them was carrying out his or her prescribed role in the criminal justice system, so that absolute immunity would attach to the conduct of each:

1. As to Coyne, see *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). Smith's contention as to Coyne's being involved in an asserted conspiracy with state officials, which fairly read amounts to no more than a claim of lawyer malpractice on the part of Coyne as Smith's appointed defense counsel, does not strip Coyne of his *Polk County*-dictated immunity under *Tower v. Glover,* 467 U.S. 914, 923, 104 S.Ct. 2820, 2826, 81 L.Ed.2d 758 (1984).

2. As to Judge Morrissey, see such cases describing the broad scope of absolute judicial immunity as *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) and *Mireles v. Waco,* 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam).

3. As to Lopez, see such cases marking out the scope of absolute prosecutorial immunity as *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) and *Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

As stated at the outset, under any view of Smith's claims both the Complaint and this action must be, and they are hereby, dismissed. Under the dictates of the Act, however, Smith remains liable for payment of the $150 filing fee on an installment basis. And finally, as stated earlier, the Motion is denied as moot.