2022 IL App (1st) 200580-U

No. 1-20-0580

Order filed October 12, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 87 CR 2082 |
| ARTHUR SMITH, | ) ) | Honorable Angela M. Petrone, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE McBRIDE delivered the judgment of the court.
Justices Reyes and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We dismiss defendant's appeal for lack of appellate jurisdiction.

¶ 2    Defendant Arthur Smith[1] appeals *pro se* from the circuit court's denial of his *pro se* motion

for leave to file a successive petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS

_____

[1] Prior orders of this court refer to defendant as Arthur Smith or Arthur L. Smith, and his name also appears in the record as Arthur Lee Smith. In this order, we adopt the styling of defendant's name from the instant *pro se* motion for leave to file a successive postconviction petition.

5/122-1 *et seq.* (West 2020)). On appeal, defendant contends that the circuit court erred where (1) trial counsel and the State suppressed exculpatory evidence, (2) the physician who treated the victim committed perjury, and (3) posttrial counsel and appellate counsel were ineffective for not challenging the physician's testimony. For the following reasons, we dismiss the appeal.

¶ 3      After a bench trial, defendant was found guilty of aggravated criminal sexual assault, criminal sexual assault, and robbery, and sentenced to a total of 40 years' imprisonment. We affirmed. *People v. Smith*, 215 Ill. App. 3d 1029 (1991). The following facts are derived from the trial record and our order on direct appeal.

¶ 4      At trial, D.G. testified that on January 14, 1987, defendant robbed and raped her in an alley in Chicago. D.G. could see defendant's face because a streetlight illuminated the alley entrance and snow reflected the light. Defendant wore a green jacket, a gray hooded sweatshirt, and dark boots.  D.G. filed a police report and described her attacker.

¶ 5      On February 2, 1987, D.G. identified defendant as her assailant in a line-up at the police station. She also identified a green jacket and gray hooded sweatshirt recovered from defendant's home as the clothes he wore during the assault. Testing of a swab taken from D.G. revealed that "it was possible for defendant to have deposited his semen in the victim's vagina." *Id.* at 1034.

¶ 6      After defendant was found guilty, trial counsel filed a motion for a new trial and defendant filed two *pro se* motions for a new trial. Defendant alleged that he had obtained medical notes from D.G.'s physician indicating her attacker was a "WM" or white male. Defendant was a black male. According to defendant, trial counsel was ineffective for not showing him the medical report. The trial court appointed new counsel for defendant and held a hearing on his motion.

¶ 7     At the hearing, Dr. Antonio Naverette testified that he treated D.G. in the emergency room on January 14, 1987, after a man sexually assaulted and choked her.  Reading his handwritten report, Dr. Naverette stated that he wrote "man," not "WM." Although defendant insisted the word was "WM," the trial court disagreed, stating, "I don't know that it's an [*sic*] 'WM.' " Nonetheless, the court found that the record was "replete with statements made by [D.G.] as to the description of the offender" and her description was "clear and unequivocal." The court therefore concluded that "whatever [defendant's] interpretation of this is, these initials, or whatever they are, I'm not sure. *** I don't think it has any basis in the case in any manner." The court denied a new trial.

¶ 8     On October 14, 1989, the trial court sentenced defendant to 40 years' imprisonment for aggravated criminal sexual assault and 7 years' imprisonment for robbery, to be served concurrently. Defendant appealed, and this court affirmed his conviction and sentence. *Id.* at 1039.

¶ 9     Defendant filed a *pro se* postconviction petition on February 25, 1992, which the circuit court summarily dismissed. On appeal, defendant alleged that trial counsel concealed from him police reports containing D.G.'s description of her attacker and failed to investigate alternate DNA testing centers.

¶ 10    This court determined that "where defense counsel knew that his client was anxious to view the police reports, counsel's failure to provide defendant with the reports was unreasonable conduct by an attorney." *People v. Smith*, 268 Ill. App. 3d 574, 579 (1994). Since the contents of the reports remained unknown, his petition "require[d] a hearing." *Id.* at 580. We also ordered the circuit court to arrange for alternate DNA testing of the State's evidence. *Id.* at 581.

¶ 11    On November 27, 1995, on remand, the circuit court directed the clerk to forward to Forensic Sciences Associates "[o]ne (1) plastic bag containing vials of blood, saliva cups, blood

samples, tip of swab containing semen" and "[o]ne (1) paper bag containing green coat [and] gray sweatshirt." The clerk impounded these items on April 6, 1990, but no DNA testing results are in the record.[2]

¶ 12    On July 28, 1997, defendant filed a supplemental postconviction petition alleging, in relevant part, that trial counsel failed to use medical records showing that D.G. was attacked by a "WM," and concealed police reports from defendant. The circuit court denied the supplemental petition on January 23, 1998, and defendant did not appeal that judgment.

¶ 13    On February 11, 1998, defendant filed a petition for federal *habeas corpus* relief. He claimed his attorneys performed unreasonably by concealing exculpatory police reports, failing to challenge medical records showing the offender was a white male, and allowing defendant's conviction based on perjured testimony. The district court denied the petition. *United States ex rel. Smith v. Tally*, No. 98 C 881 (March 9, 1999) (unpublished opinion).

¶ 14    Subsequently, defendant filed numerous unsuccessful collateral challenges to the DNA testing and results. *People v. Smith*, 1-00-4182 (2001) (unpublished order under Supreme Court Rule 23) (affirming dismissal of petition for postconviction relief); No. 1-03-0054 (2004) (unpublished order under Supreme Court Rule 23) (affirming denial of petition for relief from judgment); 1-05-0718 (2007) (unpublished order under Supreme Court Rule 23) (affirming denial of leave to file successive petition); 1-06-1470 (2007) (unpublished order under Supreme Court Rule 23) (affirming denial of leave to file successive petition); No. 1-08-2522 (2009) (appeal

---

[2] Defendant acknowledged in his May 30, 2000, successive postconviction petition that the results of the testing "didn't exclude" him.

dismissed for want of prosecution (dispositional order)); No. 1-09-2801 (2011) (unpublished order under Supreme Court Rule 23) (affirming denial of motion for DNA testing).

¶ 15    In appeal number 1-09-2801, this court noted that defendant raised his DNA testing argument in five prior filings and each time, his contention was found to be meritless. *Smith*, 1-09-2801, *3 (2009). Therefore, defendant's motion for DNA testing was "barred by the doctrine of *res judicata*." *Id.*

¶ 16    On May 17, 2018, defendant filed a *pro se* motion for leave to file the successive postconviction petition at issue in this appeal. Defendant alleged a violation under *Brady v. Maryland*, 373 U.S. 83 (1963), where trial counsel and the State suppressed exculpatory evidence, *i.e.*, medical records indicating D.G. was assaulted by a "WM" or white male. Defendant asserted that he wrote a letter to Dr. Naverette, who confirmed that "WM" means white male, but posttrial counsel failed to impeach Dr. Naverette with the letter. He alleged that the prosecutor allowed Dr. Naverette to testify falsely that the letters "WM" were, in fact, the word "man." Defendant attached a transcript of the hearing where Dr. Naverette testified that he wrote "man" in D.G.'s medical report.

¶ 17    On September 9, 2019, the circuit court denied defendant leave to file the petition. It found defendant's claims "barred by the doctrine of res judicata," as "claims about the purported 'WM,' perjured testimony, DNA testing and ineffective assistance of counsel have been made numerous times and have been ruled upon and addressed." The court also found that defendant filed a frivolous petition and assessed him a filing fee of $190 plus $15 for mailing costs.

¶ 18    Defendant filed a motion to reconsider on December 10, 2019. Although the case summary in the record shows a hearing scheduled for December 23, 2019, the record does not show the

circuit court ruled upon this motion. On March 30, 2020, defendant filed a motion for leave to file a late notice of appeal from an "Order of Judgment" entered on December 23, 2019. On April 7, 2020, this court allowed defendant leave to file a late notice of appeal from "the Order of December 23, 2019."

¶ 19    As an initial matter, neither party has addressed the issue of jurisdiction. However, this court has an independent duty to consider whether we have jurisdiction to review this appeal. *People v. Smith*, 228 Ill. 2d 95, 104 (2008).

¶ 20    Article VI of the Illinois Supreme Court Rules governs criminal appeals and sets forth the requirements for perfecting such appeals in Rule 606 (eff. Mar. 12, 2021). Rule 606(b) requires a notice of appeal to be filed within 30 days after the entry of a final judgment, "or if a motion directed against the judgment is timely filed, within 30 days after the entry of the order disposing of the motion." Rule 606(b) (eff. Mar. 12, 2021). Thus, the filing of a motion to reconsider within 30 days of the final judgment tolls the time to file a notice of appeal. *People v. Marker*, 233 Ill. 2d 158, 167-68 (2009).

¶ 21    Here, the circuit court denied defendant leave to file a successive postconviction petition on September 9, 2019. Defendant did not file a notice of appeal but instead filed a motion to reconsider on December 10, 2019, more than 30 days after the September 9, 2019, judgment. Thus, defendant's untimely motion to reconsider did not toll the time for filing his notice of appeal from the denial of his motion for leave to file a successive petition.

¶ 22    We recognize that this court allowed defendant's motion to file a late notice of appeal from the circuit court's "Order of December 23, 2019." However, our review of the record leads us to reconsider the propriety of that motion.

¶ 23 The proper filing of a notice of appeal "is the jurisdictional step which initiates appellate review." (Internal quotation marks omitted.) *Smith*, 228 Ill. 2d at 104. The notice of appeal must specify the judgment appealed from and the relief sought from the reviewing court, and confers jurisdiction on this court to consider only the judgments specified in the notice. *Smith*, 228 Ill. 2d at 104-05. The notice is sufficient to confer jurisdiction if, liberally construed, it fairly and adequately identifies the challenged judgment. *Id.* at 104-05. The failure of the notice to comply strictly with the form is not fatal if the deficiency is not substantive and the appellee is not prejudiced. *Id.* at 105.

¶ 24 Defendant's *pro se* late notice of appeal states that he is appealing from the circuit court's December 23, 2019, order denying his motion to reconsider. Defendant further states that he did not file the notice "on time" because "he never received a copy of the court order to let him know when his motion was *denied*." (Emphasis in the original.) The notice includes the case number of the underlying criminal case, defendant's convictions and sentences in that case, and a request for "the court to appoint an [a]ttorney from the Post-Conviction unit to represent [defendant] on appeal."

¶ 25 The record, as noted, does not reflect that any judgment was entered on December 23, 2019, or that the circuit court ruled on defendant's motion to reconsider on any other date.[3] No other judgment is specified in the notice of appeal. The only judgment defendant could have

---

[3] In its brief, the State asserts that the transcript of proceedings shows that the circuit court "ruled" that its order denying defendant leave to file a successive postconviction petition "would stand," *i.e.*, that the court ruled on the motion to reconsider that denial. However, the proceedings cited by the State are dated September 13, 2019, approximately three months before defendant filed his motion to reconsider. As such, the circuit court could not have addressed defendant's motion to reconsider in those proceedings.

appealed from was the circuit court's September 9, 2019, order denying him leave to file a successive petition.

¶ 26    Although the failure to list the proper order in a notice of appeal "is not always fatal to our review of that order," we have jurisdiction to consider only "prior unspecified orders that are a step in the procedural progression leading to an order that is specified in the notice of appeal." *McGath v. Price*, 342 Ill. App. 3d 19, 32-33 (2003). Defendant's notice of appeal, however, did not reference an actual judgment of the circuit court as the subject of his appeal. Thus, the September 9, 2019, order cannot be a procedural step to an order specified in the notice of appeal. The exception stated in *McGath* does not apply here.

¶ 27    We note that the record does not show the circuit court ruled upon defendant's motion to reconsider the denial of leave to file a successive postconviction petition. However, "a trial court loses jurisdiction to hear a cause at the end of the 30-day window following the entry of a final judgment." *People v. Bailey*, 2014 IL 115459, ¶ 8. Defendant filed his motion to reconsider more than three months after the circuit court denied him leave to file his successive petition. As such, the circuit court no longer has jurisdiction to consider the motion. *People v. Flowers*, 208 Ill. 2d 291, 306 (2003). Thus, even if the circuit court had denied the motion on December 23, 2019, as defendant claimed in his motion for leave to file a late notice of appeal, that judgment would be void and this court would have no jurisdiction to consider the merits of an appeal based on that judgment. *Id.* at 306-07. Denial of the motion to reconsider on some future date would be similarly void. *Id*. Defendant's unresolved and untimely motion to reconsider does not affect our determination here.

¶ 28    For the foregoing reasons, we find that defendant's notice of appeal failed to confer

jurisdiction on this court, and we dismiss defendant's appeal for lack of jurisdiction.

¶ 29    Appeal dismissed.